**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ROBERT RICKMON,** | |
| **Plaintiff,** | **Case No. 17 C 4668** |
| **v.** | **Judge Harry D. Leinenweber** |
| **ILLINOIS DEPARTMENT OF COMMERCE AND ECONOMIC OPPORTUNITY,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This discrimination and retaliation action under the Americans with Disabilities Act arises out of Plaintiff Robert Rickmon's employment with Defendant Illinois Department of Commerce and Economic Opportunity. For the reasons stated herein, Defendant's Motion for Summary Judgment (Dkt. No. 61) is denied in part and granted in part.

## I.  <u>BACKGROUND</u>

Plaintiff Robert Rickmon ("Rickmon") is a sixty-five-year-old resident of Chicago in Cook County, Illinois. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶ 1, Dkt. No. 79-1; Rickmon Dep. at 9:17-18, Def.'s Stmt. of Facts, Ex. B, Dkt. No. 63-2.) Defendant Illinois Department of Commerce and Economic Opportunity ("IDCEO") is a state agency in Illinois. (PSOF ¶ 2.)

In 1987, IDCEO's Office of Energy Assistance ("OEA") hired Rickmon as a Weatherization Specialist 2, and he holds the same position to this day. (PSOF ¶ 3; 5/9/2011 Reasonable Accommodation Request for Emps. at 1, Def.'s Stmt. of Facts, Ex. F, Dkt. No. 63-6.) Rickmon's position requires him to travel throughout Illinois to inspect and review weatherized houses, as well as monitor and audit local agencies responsible for weatherizing houses. (PSOF ¶¶ 5–9.) Rickmon's position also requires traveling to attend trainings, meetings and conferences. (PSOF ¶ 10.) When traveling for work, IDCEO policy instructs employees to drive vehicles in the following priority order: (1) department-owned ("motor pool") vehicles; (2) rental cars; and (3) personal cars. (PSOF ¶¶ 14–15.) The question at the heart of this case is whether Rickmon's requested deviation from IDCEO's policy, specifically his request to travel via public transportation, constitutes a reasonable accommodation under the Americans with Disabilities Act ("ADA").

In July 2009, after twenty-two years as a Weatherization Specialist, Rickmon started complaining to his general medical practitioner of pain in his right knee. (PSOF ¶ 18.) Shortly thereafter, Rickmon requested and was granted an exception to the IDCEO travel policy because Rickmon is over 6 feet, 6 inches tall and there were no motor pool vehicles that could accommodate his height at that time. (Def.'s Resp. to Pl.'s Stmt. of Facts ("DSOF")

¶ 3, Dkt. No. 90-1; PSOF ¶ 20.) In January 2011, Rickmon had arthroscopic surgery on his right knee. (PSOF ¶ 19.)

After his surgery, Rickmon used an ad hoc combination of trains, buses and rental cars to complete his job responsibilities but did not receive consistent approval from IDCEO to deviate from the travel policy. (DSOF ¶¶ 5-6.) On May 9, 2011, Rickmon filled out a disability form provided by the State of Illinois, entitled the "Reasonable Accommodation Request for Employees." (5/9/2011 Reasonable Accommodation Request for Emps. at 1.) The form includes a short explanation of state and federal disability law and instructs employees to submit the completed form to their immediate supervisor and the agency's Equal Employment Opportunity/Affirmative Action ("EEO/AA") Officer or ADA Coordinator. (*Id.*) In his accommodation request, Rickmon asked to bypass IDCEO's policy prioritizing motor pool vehicle use and instead rent full-size vehicles with a power seat adjustment and increased leg room. (*Id.* at 2.)

Attached to Rickmon's request paperwork is a second form, entitled "Physician's Statement: Authorization for Disability Leave and Return to Work," which Dr. Rubenstein filled out on February 25, 2011. (*Id.* at 3-4.) In response to the form's inquiry, Dr. Rubenstein lists two disabilities: (1) arthritis of the right knee, and (2) a torn meniscus. (*Id.* at 3.) Dr. Rubenstein elaborates on the disability in the remarks section, writing that

- 3 -

Rickmon "[n]eeds to limit driving distances and drive in [a] car that allows knee to be extended + have power adjusted seat." (*Id.* at 4.)

On June 10, 2011, IDCEO's ADA Coordinator, Barb Call ("Call"), denied Rickmon's request to bypass the motor pool car policy, as she found that the motor pool now included at least one full-size car with a power-adjusted driver's seat and adequate leg room. (PSOF ¶ 26.) Instead, Call approved a hybrid accommodation. Rickmon was to request one of IDCEO's full-size vehicles. If one was not available, he was then permitted to rent a larger vehicle. (PSOF ¶¶ 15, 25, & 27.)

In April 2013, Rickmon filled out a second "Reasonable Accommodation Request for Employees" and attached a letter from Dr. Rubenstein. (4/10/2013 Email from K. Bozarth to R. Rickmon at 2, PSOF, Ex. 3, Dkt. No. 79-4.) The letter from Dr. Rubenstein stated in part:

> Currently Mr. Rickmon has difficulties with prolonged walking distances. He is unable to run. He also has trouble sitting with his knee bent for any prolonged period of time. This requires him to drive larger cars so that he may keep his knee in a stretched out position. It also requires him to get out and stretch and walk around frequently if he is driving for more than 45 minutes to an hour. It also requires him to take other forms of transportation if he has to go long distances such as a train or a bus which allows him to get up and move about while he is traveling.

(*Id.* at 3.)

On May 7, 2013, Rickmon provided a comprehensive plan to travel across the state using the Metra, Amtrak, Greyhound, rental cars, and the single full-size rental car available in IDCEO's motor pool. (5/7/2013 Email from J. Knox to L. Dawson at 1, Def.'s Stmt. of Facts, Ex. I, Dkt. No. 63-8.) Rickmon noted the "Northwestern, Rockford, and Tri-County" locations would be inaccessible under his reasonable accommodation request. (*Id.*) In response, IDCEO requested an independent medical examination. (9/30/2013 Indep. Med. Examination at 2, Def.'s Stmt. of Facts, Ex. J, Dkt. No. 63-9.) Dr. Cole, Professor at the Department of Orthopaedics, concurred that Rickmon had "advanced osteoarthritis" and opined that Rickmon:

> should be accommodated with either being provided the appropriate vehicle, which will afford him automatic seat adjustment and more comfortable transportation of himself to and from the job site; or he be afford the privilege of reimbursed travel by train to and from a job site with car rental of an appropriately accommodated vehicle at that site.

(*Id.*) On October 11, 2013, IDCEO informed Rickmon that his request for accommodation was, again, not entirely granted. (PSOF ¶¶ 34-36.) IDCEO stated that it intended to purchase a second full-sized vehicle. As a result, Rickmon was directed first to attempt to reserve a full-size vehicle from the motor pool. If unavailable, "other modes of travel (e.g., Amtrak Train, Bus or Metra Train) may be made available" to Rickmon, if his immediate supervisor or his supervisor's designee granted prior approval. (PSOF ¶¶ 35-36.)

For reasons undeveloped in the record, Mr. Kevin Bell ("Bell"), IDCEO's Deputy Director and the agency's internal Equal Opportunity Officer for the Office of Equal Opportunity, Monitoring & Compliance, reviewed Rickmon's disability accommodation in June 2014. Bell concluded that IDCEO did not "enter into the **interactive process** to identify a suitable accommodation." (6/12/2014 Email from K. Bell to E. Monk at 1, PSOF, Ex. 7, Dkt. No. 79-8 (emphasis in original).) Bell stated that "**[I]DECO and any employer can deny an accommodation request on the basis of undue hardship, but, in doing so, it should be able to document through cost (which is difficult to establish) or other factor (perhaps inefficiency)**," and noted that Rickmon's file did not provide documentation to support this finding. (*Id.* (emphasis in original).) Bell stated that "an employer is also legally entitled to provide an equally effective accommodation to the one proposed by the employee that better meets the employer's needs," but that Rickmon currently denies the effectiveness of IDCEO's current accommodation. (*Id.*) Bell considered Rickmon's Amtrak and Metra plan to be a "fair accommodations request" and suggested that his current accommodation be amended by IDCEO. (*Id*; DSOF ¶ 14.)

Presumably in response to Rickmon's file review, IDCEO issued a modification letter on August 18, 2014. (8/18/2014 Letter to R. Rickmon, Def.'s Stmt. of Facts, Ex. K, Dkt. No. 63-12.) When

traveling to destinations in the Chicago metropolitan area and to Peoria, Livingston, and McLean counties, Rickmon was directed to attempt to secure one of the larger cars from IDCEO's motor pool. (*Id.*) If unable to do so, he was permitted to use a rental car. (*Id.*) When traveling to other locations that were more than 200 miles from the Chicago metropolitan area, as measured by distance from the Thompson Center, IDCEO approved Rickmon to travel by Amtrak, bus, or motor pool vehicle. (*Id.*)

On March 15, 2015, Rickmon submitted his third request for a reasonable accommodation. (PSOF ¶ 39.) The physician's letter attached to the request, again written by Dr. Rubinstein, detailed Rickmon's health problems that resulted from long distance driving. (3/5/2015 Reasonable Accommodation Request for Emps. at 2, Def.'s Stmt. of Facts, Ex. M, Dkt. No. 63-13.) Dr. Rubinstein recommended that Rickmon:

> avoid drives over about an hour at a stretch and try to accommodate driving beyond an hour with public transportation such as a train rather than being forced to drive for those long periods of time. I would suggest that 35-45 miles would be the maximum amount that Mr. Rickmon should drive for appointments while at work.

(*Id.*) On March 19, 2015, IDCEO denied the request in a four-page memorandum. (PSOF ¶ 41; 3/19/2015 Memorandum Re: Rickmon Request, Def.'s Stmt. of Facts, Ex. N, Dkt. No. 63-14.)

In summary, both Rickmon and IDCEO agree that Rickmon should drive to job site locations that are less than 45 miles away and

use train travel for some distances beyond the 200-mile threshold. However, the parties dispute the appropriate mode of travel to job site locations over 45 miles away and within either the Chicago metropolitan area or Peoria, Livingston, and McLean counties. The parties also generally dispute Rickmon's appropriate method of travel to locations greater than 45 miles and less than 200 miles away.

Beginning on September 8, 2014, and reoccurring on October 9, October 17, October 22, and December 3, 2014, Rickmon refused to reserve a motor pool vehicle to complete visits to Peoria and other central Illinois locations. (PSOF ¶¶ 47, 49, & 51.) In response, Rickmon received both oral and written reprimands, and, eventually, a one-day suspension. (*Id.* ¶¶ 48, 50, & 52.) Other than the cited refusals to travel via motor vehicle, Rickmon has not had any job performance issues. (DSOF ¶¶ 26–27.) In the fall 2015, Rickmon requested two hours of overtime for attending a team visit to the Community Economic Development Association of Cook County. (PSOF ¶ 57.) IDECO denied this request. (*Id.* ¶ 58.) In fall 2017, Rickmon did not attend a mandatory conference. (*Id.* ¶ 53.) When Rickmon requested to use two days of sick leave to excuse his absence, he was asked to provide a note from his physician. (*Id.*¶ 54.) When he was unable to do so, IDCEO denied his request. (*Id.* ¶¶ 54–55.)

Rickmon filed his first charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 18, 2014. (PSOF ¶ 62.) On December 8, 2015, the EEOC determined there was reasonable cause to believe that IDCEO discriminated against Rickmon. (Def.'s Answer ¶ 7, Def.'s Stmt. of Facts, Ex. A, Dkt. No. 63-1.) On March 22, 2017, the EEOC issued a notice of Rickmon's right to sue IDCEO. (*Id.* ¶ 8.) On February 2, 2018, Rickmon filed an additional charge of disability discrimination with the EEOC, and the EEOC issued a second notice of Rickmon's right to sue on September 28, 2018. (*Id.* ¶¶ 9-10.) Rickmon brought this action in June 2017 and filed his Second Amended Complaint in January 2019. Rickmon brings two claims against IDCEO under the ADA: (1) failure to accommodate; and (2) retaliation. (Second Am. Compl. ¶¶ 32-46, Dkt. No. 29.) IDCEO now moves for summary judgment on both counts.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A fact is "material" when identified by substantive law as affecting the outcome of the suit. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014). An issue is "genuine" when the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* When reviewing the record on

a summary judgment motion, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Bunn,* 753 F.3d at 681.

### III.  DISCUSSION

### A.  Local Rule 56.1 Compliance

The Court first addresses the parties' dispute on the Northern District of Illinois Local Rule 56.1(a)(1)–(b)(3). IDCEO dedicates several pages of its reply brief to assertions that Rickmon fails to comply with Local Rule 56.1(b)(3). IDCEO argues Rickmon's objections to IDCEO's statement of facts are insufficiently supported, argumentative, and needlessly dispute immaterial facts. IDCEO also argues Rickmon's statement of additional facts contains immaterial and vague statements, is riddled with legal conclusions, and often improperly relies on hearsay.

Local Rule 56.1 was designed to assist district courts and "streamline the resolution of summary judgment motions." *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 818 (7th Cir. 2004) (citations omitted). This did not happen here. Both Rickmon and IDCEO submitted conclusory facts in their Local Rule 56.1 statements and made frivolous objections in their responses and briefing. Most of the objections from both parties can be

classified as one side objecting to the other's factual spin or sloppy composition. These are resolved, easily if somewhat painstakingly, by the Court's review of and reliance on the underlying record. Two of IDCEO's arguments, however, are legal objections and require additional analysis.

First, IDCEO claims that many of Rickmon's facts are immaterial. IDCEO states that "the only accommodation request at issue is Plaintiff's March 5, 2015 request." (Reply at 3, Dkt. No. 90.) As a result, IDCEO argues that any prior facts provided by Rickmon are immaterial, and Rickmon's dispute of IDCEO's statement of facts improper. An employee may use "prior acts as background evidence in support of a timely claim" for discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In *National Railroad Passenger Corporation*, the plaintiff filed a claim alleging employer discrimination over five years. 536 U.S. at 105 n.1. The Supreme Court held that the discrete acts outside of the statutory time period, while themselves not actionable, can be used as relevant evidence with a timely claim. *Id.* at 113. As a result, facts regarding IDCEO and Rickmon's employer-employee relationship prior to the March 5, 2015 reasonable accommodation request are material to Rickmon's claim under the ADA. The Court also notes that IDCEO position is illogical. Under Local Rule 56.1, IDCEO was instructed to submit "a statement of material facts." NDIL LR 56.1(a)(3). IDCEO cannot

submit facts for the purposes of summary judgment and then claim those same facts are immaterial once Rickmon disputes them.

Second, IDCEO claims that Rickmon's reliance on personal knowledge via affidavit and an April 15, 2013 email written by Rickmon are "hearsay" in a summary judgement motion. (DSOF ¶¶ 5-7, 20 & 21.) This is incorrect. A party's personal knowledge, through an affidavit or otherwise, is not hearsay on a summary judgment motion unless there is conflicting evidence in the record. *See McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("[T]he court was wrong to discount [plaintiff's] testimony as self-serving, speculative, and conclusory. Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.") (citations and internal quotations omitted). IDCEO's hearsay and immateriality objections run against well-established case law, and the Court disregards them.

The Court uses the underlying exhibits on the remaining disputed facts, as well as the remaining undisputed facts in IDCEO and Rickmon's submissions, when reviewing Rickmon's failure to accommodate and retaliation claims under the ADA.

## B. Count One: Failure to Accommodate

Rickmon claims that IDCEO failed to grant him a reasonable accommodation for his disability as prohibited by 42 U.S.C.

§ 12112(b)(5)(A). Rickmon and IDCEO present two different standards to evaluate Rickmon's claim. IDCEO states that Rickmon must show "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) IDCEO took an adverse job action against him because of his disability or without making a reasonable accommodation for it." (Mot. at 5, Dkt. No. 59.) Rickmon states that he must show "(1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to offer him a reasonable accommodation for his disability." (Resp. at 6, Dkt. No. 79.)

The Seventh Circuit has clarified multiple times that there are two discrimination claims under the ADA: a disparate treatment claim and a failure to accommodate claim. *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996) ("Again, [. . .] this is not a disparate treatment claim, but a reasonable accommodation claim, and it must be analyzed differently.") As described in *Mlsna v. Union Pacific Railroad Company*, "[a] disparate treatment claim arises from ADA language prohibiting covered entities from 'limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee.'" No. 19-2780, 2020 WL 5511988, at *3 (7th Cir. Sept. 14, 2020) (citing 42 U.S.C. § 12112(b)(1)). In contrast, a failure to accommodate claim

arises from 42 U.S.C. § 12112(b)(5)(A), where discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *Id.* (citing 42 U.S.C. § 12112(b)(5)(A)).

A cursory review of the Second Amended Complaint shows that Rickmon pled a failure to accommodate claim (Second Am. Compl. ¶¶ 32-46.) As a result, there must be sufficient evidence such that a reasonable jury could find: (1) he was disabled, (2) his employer was aware of his disability, and (3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. *Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001).

In part because IDCEO identified and argued the wrong standard in its briefing, IDCEO disputes neither its awareness of Rickmon's disability nor Rickmon's status as a qualified individual, the second and third prong of a failure to accommodate claim. These arguments are forfeited for the purposes of summary judgment. *Cf. Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). The Court will thus address the only remaining prong of a failure to accommodate claim, which concerns whether Rickmon is disabled as defined by the ADA.

### *1. Disability Under the ADA*

To prove that IDCEO has failed to accommodate Rickmon's disability, he must first show that he is disabled and thus entitled to an accommodation. *Basith*, 241 F.3d at 927. The ADA recognizes three definitions of "disability." 42 U.S.C. § 12102(1)(A)–(C). As part of an initial disability claim, a plaintiff must show one of the following definitions apply: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) be regarded as having such an impairment. *Johnson v. City of Chi. Bd. of Educ.*, 142 F.Supp.3d 675, 684 (N.D. Ill. 2015) (citing *Stewart v. Cty. of Brown*, 86 F.3d 107, 111 (7th Cir. 1996)). IDCEO argues that Rickmon is not disabled because his physical impairment does not substantially limit any life activity; Rickmon argues his physical impairment restricts several of them. Neither party addresses the second or third definitions– whether there was a record of Rickmon's impairment or whether IDCEO regarded Rickmon as having an impairment. As such, the Court will only determine whether a reasonable jury could find that Rickmon is substantially limited in at least one major life activity due to a physical or mental impairment.

IDCEO and Rickmon agree that Rickmon is physically impaired. Specifically, Rickmon has degenerative arthritis in his right knee, which results in "slower walking, and standing, [and he]

cannot stand for a long time, or drive long distances, and experiences stiffness after driving." (PSOF ¶ 20.) IDCEO's position is that this impairment does not substantially limit Rickmon's major life activities. Rickmon claims that this physical impairment limits four major life activities: standing, walking, sitting, and working by means of driving.

While the ADA defines standing, walking, and sitting as major life activities, it does not address driving. 42 U.S.C. § 12102(2). As such, the Court will first address Rickmon's claims regarding standing, walking, and sitting, and separately address Rickmon's claim regarding driving.

### a. Walking, Standing, and Sitting

Because standing, walking, and sitting are major life activities, Rickmon must only show evidence that one or more of these activities is "substantially limited." 42 U.S.C. § 12102(2). The Code of Federal Regulations instructs that the term "shall be construed broadly in favor of expansive coverage," but notes that "[n]onetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(i)–(ii). To differentiate between a limiting and a substantially limiting impairment, Rickmon must show his relative inability "to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii).

The evidence addressing Rickmon's walking, standing, and sitting is limited. In his deposition, Rickmon testifies that walking and standing are impaired because these activities "just take[] a little more time, slower walking, slower standing, can't stand as long." (Rickmon Dep. at 75:6-9.) Even under a broad construction of the ADA, Rickmon's restrictions, as he describes it, do not qualify as a substantial impairment. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (holding that arthritis that affects the "rate and pace" of walking does not constitute a substantial impairment when compared with the ability of the average person). Further, Rickmon testified that he was able to perform all his duties inspecting homes as required by his job. (Rickmon Dep. at 75:19-21.) Per his job description, Rickmon regularly "complete(s) physical inspection of the attic, crawl space, roof, and interior and exterior perimeters." (Weatherization Specialist 2 Position Description at 1, Def.'s Stmt. of Facts, Ex. C, Dkt. No. 63-3.) Rickmon's careful inspection of real estate includes prolonged walking and standing. As Rickmon performs his job duties without concern from himself or his employer, there is insufficient evidence for a reasonable jury to find that Rickmon is significantly restricted in standing or walking as compared to the average person. *See Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006) (holding that a diabetic employee

who "routinely completed all of his work duties during his eight-hour shift" was not severely restricted in walking or standing).

Rickmon also claims that his sitting is restricted because he cannot sit with his knee at a certain angle for long periods of time. It is unclear if a certain knee-angle restriction qualifies as "substantially limiting" Rickmon's general ability to sit. Moreover, Rickmon's sitting only causes him problems when Rickmon is driving. (*See, e.g.,* 3/20/2013 Referral Letter at 1, PSOF, Ex. 5, Dkt. No. 79-5.) As a result, this restriction is best considered under Rickmon's final major life activity claim, that his arthritis has significantly limited his ability to drive, and thus, work.

### b. *Driving*

IDCEO agrees that, due to Rickmon's arthritis, Rickmon cannot "drive long distances." (PSOF ¶ 20.) The parties acknowledge that "driving is not, in itself, a major life activity." *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009). Instead, Rickmon argues that his inability to drive substantially impairs his major life activity of working. IDCEO agrees that Rickmon's job requires driving long distances. (PSOF ¶¶ 6-11 & 14-15.) IDCEO argues, however, that Rickmon's driving restrictions do not prevent him from working because Rickmon testified that he can work in an "office setting." (*Id.* ¶ 21.)

For a plaintiff to show he is substantially limited in the activity of working, the impairment must restrict a plaintiff from

working beyond the single position at issue. The plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Delgado v. Certified Grocers Midwest, Inc.*, No. 07-3140, 2008 WL 2486027, at *3 (7th Cir. 2008) (citations omitted). For this reason, it usually is necessary for the plaintiff to provide evidence of the kind of jobs the plaintiff would be excluded from due to his impairment. In unusual cases, however, the "impairment[] is so severe that their substantial foreclosure from the job market is obvious." *Id.* (citing *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001)).

Based on this guidance, IDCEO errs in two respects. First, even if the Court assumes that Rickmon's vague testimony regarding an "office setting" is sufficient to prove that that Rickmon can perform an alternative job or type of job, this does not preclude Rickmon from claiming that he cannot perform the range of jobs that require long-distance driving. A mathematician is not precluded from claiming he is disabled because he is capable of moving furniture, and a household mover's disability claim is not barred by a math degree. Just as a plaintiff's impairment must restrict more than a single job, a defendant's counter that a plaintiff could perform a different, alternative job does not foreclose a reasonable fact finder from concluding a plaintiff is

disabled. The Court could not find any authority, nor does IDCEO cite any, holding that a plaintiff must be unable to perform any job before he is impaired in the major life activity of working. For this reason, Rickmon could be physically capable to work in an office setting and still be disabled under the ADA.

Second, IDCEO's response does not counter the evidence that Rickmon's physical impairment is itself proof of substantial job limitation. The Seventh Circuit's decision in *Best v. Shell Oil Company*, and its subsequent explanation of that decision in *Delgado v. Certified Grocers Midwest, Incorporated*, are instructive. In *Best*, plaintiff Best worked for more than five years as a gasoline delivery truck driver. 107 F.3d 544, 544 (7th Cir. 1997). Following an injury, he began to have pain when bending the knee "more than 90 degrees inward towards his body." *Id.* at 545. After surgery, Best continued to suffer pain and swelling. *Id.* Shell, Best's employer, requested an independent medical doctor to examine Best's knee. The subsequent report recommended a modified seat to prevent injury. *Id.* The Seventh Circuit held that, despite the lack of record regarding truck drivers generally, a "knee injury, which precluded [Best] from driving, was sufficient to overcome summary judgment on the question whether he was disabled under the ADA." *Delgado*, 2008 WL 2486027, at *4.

In this case, Rickmon has worked for IDCEO for over thirty years. (PSOF ¶ 4.) Like *Best*, Rickmon required knee surgery and

was unable to drive without a modified seat to provide extended leg room. (PSOF ¶¶ 19, 25.) And, similar to *Best*, IDCEO's independent examination resulted in further evidence that Rickmon's impairment prevented him from driving without accommodation. (PSOF ¶ 33.)

IDCEO is correct that, similar to *Best,* Rickmon did not provide evidence that his arthritis restricts more than his current job position, as generally required under ADA case law. *Delgado*, 2008 WL 2486027, at *3. However, a reasonable jury could find it self-evident Rickmon's 45-minute driving restriction impairs his ability to perform a broad range of jobs. *See also DePaoli v. Abbott Labs.*, 140 F.3d 668, 673 (7th Cir. 1998) (holding a worker who could not perform repetitive motions with her right hand was precluded from "virtually any assembly line job that required repetitive movement"); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 911 (7th Cir. 1996) (holding a coal miner's substantial restrictions "– no overhead work, heavy lifting, or pulling and pushing out from his body — might apply to a broad range of jobs, and are more than job specific.") For this reason, Rickmon's claim that his driving limitations significantly restrict his major life activity of working survives IDCEO's summary judgment challenge.

## 2. *Reasonable Accommodation*

IDCEO argues that, even if Rickmon is a qualified individual under the ADA, no jury could find his request for accommodation reasonable given its hardship on IDCEO's operations. Once the plaintiff has shown that he or she is a qualified individual under the ADA, an employer "must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005); 42 U.S.C. § 12112(b)(5)(A). Because this element is the defendant's burden of proof at trial and defendant is the moving party in this motion, the facts "should be view[ed] . . . in the light *most* favorable" to Rickmon. *Bultemeyer*, 100 F.3d at 1286 (emphasis in original). To determine whether an entity would suffer undue hardship to accommodate a disabled person, the ADA provides four factors for consideration:

> (i) the nature and cost of the accommodation needed under this chapter;
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111. In support of its argument, IDCEO cites to a memorandum denying Rickmon's third accommodation request. (3/19/2015 Memorandum Re: Rickmon Request.) The memorandum asserts that "utilizing train schedules . . . requires overtime, extensive layover time, and additional costs. Use of a remote rental car or reliance on sub grantee agency staff creates time consuming logistical tasks and diminishes a monitor's flexibility in getting to and inspecting weatherization work." (*Id.* at 2.) After describing a few hypothetical weatherization specialist scenarios, the memorandum notes: "[a]dditional restrictions on [Rickmon]'s availability and/or access to all service territories within Illinois would have a negative impact on OEA's ability to operate efficiently when addressing those scenarios." (*Id.* at 3.)

IDCEO's single memorandum falls short of the evidence required to find undue hardship on a motion for summary judgment. Both a reasonable and an unreasonable accommodation could have a "negative impact" on IDCEO's operations. (*Id.* at 3.) The question before the Court is not whether there is a hardship, but whether it is undue. This requires "evidence quantifying the financial burden that would accompany accommodating plaintiff as is

necessary to evaluate the factors listed in § 12111 (10)(B)." *Jankowski v. Dean Foods Co.*, 378 F.Supp.3d 697, 712–13 (N.D. Ill. 2019). IDCEO's memorandum is remarkably silent on specifics.

For example, IDCEO claims that "utilizing train schedules . . . requires overtime, extensive layover time, and additional costs." (*Id.* at 2.) Appropriate evidence to support overtime and layover time burdens would be train schedules, estimated driving times, and average train or driving delays. Appropriate evidence of costs would include train ticket prices and rental car price estimates. IDCEO provides neither. Nor does IDCEO attempt to quantify the time and costs involved, relying exclusively on descriptors like "extensive" and "additional." (*Id.*) The Court makes no determination as to whether a train ticket is a reasonable substitution for a car rental. Without any objective or referential measurements from IDCEO, the Court cannot determine the degree of hardship Rickmon's accommodation request poses, much less determine it is an undue hardship for IDCEO.

Even taken at face value, the memorandum is inconclusive and vague. For example, the memorandum cites "overtime" as a specific hardship to IDCEO. (3/19/2015 Memorandum Re: Rickmon Request at 1.) Further in the text, however, the memorandum also states that Chicago employees are "allowed overtime for early morning travel and meetings and trainings are regularly scheduled to late morning to allow for staff travel." (*Id.* at 3.) It is unclear how

the train-induced overtime requested by Rickmon, who is based in Chicago, differs from the regularly permitted overtime costs described in the same memorandum. IDCEO does nothing to clarify this apparent discrepancy.

Further, Rickmon's evidence suggests that the memorandum is inaccurate. Rickmon provides overtime records to prove that his prior train overtime payments are equal to or less than the driving overtime payments of other weatherization specialists. (DSOF ¶ 19.) IDCEO disputes Rickmon's act of comparing himself to other weatherization specialists but does not explain why Rickmon is unlike others in his position. (*Id.*) IDCEO's objection is puzzling as courts and jurors can use a plaintiff's testimony regarding similarly situated employees to support an inference that an employer's rationales are "not only mistaken but dishonest." *McKinney*, 866 F.3d at 812. Without a more specific objection from IDCEO as to why Rickmon is unique among weatherization specialists, the Court thinks it is reasonable for Rickmon to draw comparisons from himself to other similarly situated employees.

This conflicting evidence on material facts requires resolution by a jury. A reasonable juror could interpret IDCEO's constantly changing position on permitted types of travel to mean that Rickmon is a troublesome employee or that IDCEO is unwilling to provide adequate accommodations. Similarly, a jury's consideration of the internal compliance review on Rickson's file

has no clear resolution. A juror could find the dutifully copied language in IDCEO's subsequent memorandum denying Rickmon's third accommodation to be either a post hoc justification or a good faith analysis. As a result, IDCEO's evidence is incomplete and lacks the requisite specificity to establish undue hardship.

Because there is a genuine dispute of material fact both as to Rickmon's disability and the hardship imposed by Rickmon's accommodation request, the Court denies IDCEO's Motion for Summary Judgment on Count One.

### C. Count Two: Retaliation

IDCEO also moves for summary judgment on Rickmon's retaliation claim. To survive summary judgment, a reasonable jury must be able to find that (1) Rickmon engaged in protected activity, (2) he suffered an adverse action, and (3) there is a causal connection between the two. *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). IDCEO does not dispute that Rickmon engaged in a protected activity, satisfying prong number one. The parties also agree that the following employer actions happened in the wake of Rickmon's reasonable accommodation request and subsequent EEOC complaint: (1) an overtime request denial, (2) a series of oral and written reprimands culminating in a one-day suspension, and (3) a denial of sick time leave. (PSOF ¶¶ 47–58.)

IDCEO argues that these actions, reviewed individually, either do not constitute adverse actions, lack a causal connection, or both. Rickmon focuses on the theory that these actions, taken as a whole, are adverse and causally connected. Accordingly, the Court addresses these actions both separately and holistically under the two remaining prongs of the retaliation test.

### 1. *Overtime Request Denial*

On November 16 and 19, 2015, Rickmon attended "a team visit to the Community Economic Development Association of Cook County." (PSOF ¶ 57.) Rickmon subsequently requested two hours of overtime in conjunction with this team visit. (*Id.*) IDCEO denied Rickmon's request. (*Id.* ¶ 58.) Rickmon argues that IDCEO denied his overtime request as a direct result of his reasonable accommodation request and disability discrimination charge with the EEOC on September 18, 2014. (PSOF ¶¶ 63.) IDCEO argues that the overtime denial cannot be considered in this Motion because it is time-barred. IDCEO also argues that, even if it is not time-barred, the overtime denial does not constitute an "adverse action" within the meaning of the ADA.

Under the ADA, a charge of employment discrimination must be "filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2005(e)(1). IDCEO notes that Rickmon's second charge of discrimination with the EEOC was on February 2, 2018. (Def.'s Ans.

¶ 9.) IDCEO claims that, because Rickmon's second charge is more than 300 days from November 2015, his overtime denial retaliation claim is now time-barred.

IDCEO is incorrect. It is well-established that "the permissible scope of a judicial complaint includes any new acts occurring during the pendency of the charge before the EEOC." *Hemmige v. Chi. Pub. Sch.*, 786 F.2d 280, 283 (7th Cir. 1986); *see also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989), superseded by statute on other grounds as recognized in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). Rickmon filed his first charge of discrimination on September 18, 2014. (PSOF ¶ 62.) The EEOC completed its administrative process on March 22, 2017. (Def.'s Answer ¶ 8.) Because November 2015 comes between September 18, 2014, and March 22, 2017, Rickmon's overtime denial retaliation claim is not time-barred.

IDCEO next argues that the overtime denial cannot be considered an adverse action because the overtime is not a "significant and recurring" part of Rickmon's total earnings. *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 436 (7th Cir. 2009). In *Lewis,* the Seventh Circuit agreed with the district court that the denial of an opportunity for overtime is "a materially adverse employment action if the overtime is a significant and recurring part of an employee's total earnings." 590 F.3d at 436. If, on the other hand, the opportunity is "insignificant and

nonrecurring, it will not be a materially adverse employment action." *Id.* Rickmon does not address this standard and argues that every hour should be compensated, even if the effect is de minimus. Rickmon offers no evidence of other overtime denials. It follows then that a single denial for two hours of overtime is insignificant and nonrecurring. Thus, the overtime request denial is not an adverse action under the ADA.

### 2. *Sick Leave Denial*

Two years later, on November 14 and 15, 2017, Rickmon missed a mandatory conference. (PSOF ¶ 53.) Rickmon requested to use two days of sick leave. (*Id.* ¶ 54.) IDCEO asked that Rickmon first provide a doctor's note. (*Id.* ¶ 55.) When he did not, IDCEO denied Rickmon's request. (*Id.* ¶¶ 55–56.) Rickmon argues that this sick leave denial was in retaliation for his ongoing protected activity from September 2014 to present day.

IDCEO argues that a single sick leave denial is not a materially adverse action. To prove an action is adverse in a retaliatory claim, a plaintiff must show that the adverse action "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (citations omitted). In creating this standard, the Supreme Court directed courts to separate the "significant from trivial harms." *Id.* For smaller injuries, significance is based in part on repetition. *Id.* at 68–69. The Supreme Court held

that an occasional refusal to invite an employee to lunch was a "nonactionable petty slight," but exclusion from a "weekly training lunch [. . .] might well deter a reasonable employee from complaining about discrimination." *Id.* at 69.

Rickmon alleges that a single sick leave denial constitutes an adverse action. Unfortunately, Rickmon does not elaborate on this contention. It is unclear if a sick leave denial would deter a reasonable worker from making a charge of discrimination. Regardless, the undisputed facts foreclose a causal connection.

Generally, courts find a causal connection if "the evidence would permit a reasonable factfinder to conclude that [a plaintiff's] requests for accommodations caused the discharge." *Rowlands*, 901 F.3d at 801. IDCEO states it denied Rickmon's sick leave request because it asked for "documentation in the form of a doctor's note to support his request," and Rickmon never provided the doctor's note. (PSOF ¶ 55.) Rickmon agrees that he did not give IDCEO a doctor's note. (*Id.*) Again, Rickmon does not provide any context or explanation. Thus, the Court holds that no reasonable juror could conclude Rickmon's protected activity caused the sick leave denial.

### 3. Suspension

Beginning on September 8, 2014, and continuing through the end of that year, Rickmon refused to reserve motor pool vehicles to travel to Peoria and other central Illinois locations. (PSOF

¶¶ 47, 49 & 51.) In response, IDCEO issued oral and written reprimands. (*Id.* ¶¶ 48 & 50.) As a result of these accumulated violations, on March 3, 2015, IDCEO suspended Rickmon for one day. (*Id.* ¶ 52.)

IDCEO argues that Rickmon's March 3, 2015, suspension lacks a causal connection to Rickmon's protected activity under the ADA. The parties agree that IDCEO suspended Rickmon because he failed to follow IDCEO's standard travel policy after IDCEO partially denied his accommodation request. (*Id.* ¶52.) Rickmon argues this is conclusive proof of a causal connection between the activities; IDCEO argues this is conclusive proof of a causal severance. Because the parties agree on the facts, it is a question of law whether denying a request for accommodation and then disciplining that employee for not completing his job responsibilities constitutes retaliation under the ADA.

Under these circumstances, it does not. The purpose of the antiretaliation provision is to "prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington,* 548 U.S. at 63. Evidence showing that a plaintiff failed to meet the employer's legitimate expectations "rebut[s] any presumption that the actions were taken in retaliation." *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016). Travel is an essential part of Rickmon's position. (PSOF ¶ 8.) Failure to do an

essential function of the job is a legitimate reason for work discipline. The evidence on summary judgment shows no reason to believe that Rickmon's refusal to do his job and the subsequent discipline was otherwise related to his protected activities.

### 4. *Hostile Work Environment*

Although IDCEO's two-hour overtime denial, two-day sick leave denial, and one day suspension were individually insufficient, Rickmon argues that the cumulative effect of these slights allows a reasonable factfinder to find evidence of retaliation. Hostile work environment claims under the ADA are unusual but assumed cognizable in the Seventh Circuit. *Silk v. City of Chi.*, 194 F.3d 788, 804 (7th Cir. 1999). A hostile work environment claim follows Title VII litigation, such that a plaintiff must "show that his or her work environment was both subjectively and objectively hostile." *Id.* (citing *Adusumilli v. City of Chi.*, 164 F.3d 353, 361 (7th Cir.1998)). Courts should not "carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive" but instead review "the totality of the circumstances." *Hall v. City of Chi.*, 713 F.3d 325, 331 (7th Cir. 2013) (citations omitted).

Even taking the facts in the light most favorable to him, Rickmon's claim of a hostile work environment fails. Objectively, the district court must consider the "frequency of the

discriminatory conduct, its severity" and "whether it unreasonably interferes with an employee's work performance." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). IDCEO's disciplinary measures, the 2015 overtime denial, and the 2017 sick leave denial are neither frequent, severe, nor unreasonably interfering with Rickmon's work performance. *See Silk*, 194 F.3d at 807 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (citations omitted); *cf. Hall*, 713 F.3d at 330 (holding an environment where the plaintiff "reviewed useless videotapes, her colleagues were forbidden from speaking to her, she was prohibited from Division meetings, her efforts to take on more work were suppressed, and [her supervisor] subjected her to occasional verbal outbursts as well as one minor physical altercation" to be objectively hostile).

Rickmon also fails to meet the subjectivity requirement. Specifically, Rickmon must show that he "perceived [the work environment] to be abusive." *Silk*, 194 F.3d at 805. Rickmon cites to a single line in his deposition to support his perception of harassment, stating that the environment at IDCEO "wears on you after a while." (Rickmon Dep. at 164:13-14.) This statement is ambiguous and fails to show that Rickmon perceived the environment to be abusive. The Court has no way of knowing whether Rickmon's feelings were due to harassment, his perceived lack of

accommodation from his employer, or simply the day to day struggles of his job. Regardless, evidence establishing an environment that "wears on you" does not establish a subjectively hostile work environment. *Cf. Haugerud*, 259 F.3d at 695 (finding "problems with sleep, depression, and weight gain, as well as several incidents in which she was brought to tears" as a result of her work environment to be subjectively abusive). The evidence shows Rickmon's work environment was neither objectively nor subjectively hostile. Rickmon cannot establish retaliation via a hostile work environment claim.

No reasonable jury could find that IDCEO retaliated against Rickmon, either directly or through a hostile work environment. The Court grants IDCEO's Motion for Summary Judgment on Count Two.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, IDCEO's Motion for Summary Judgment (Dkt. No. 61) is denied in part and granted in part.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 10/13/2020